UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACK FREEMAN,

              Petitioner,

  -vs-

GREGORY KADIEN, Superintendent,

              Respondent.

**DECISION AND ORDER**
**No. 08-CV-6468T**

_____

## I. Introduction

*Pro se* petitioner Jack Freeman ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered October 12, 2005, in New York State, County Court, Ontario County, convicting him, after a jury trial, of Vehicular Assault in the Second Degree (N.Y. Penal Law ("Penal Law") former §§ 120.03 [1], [2]), Assault in the Second Degree (Penal Law § 120.05 [4]), Leaving the Scene of a Personal Injury Incident without Reporting (Vehicle and Traffic Law ("VTL" § 600 [2]), and two counts of Driving While Intoxicated as a Misdemeanor (VTL §§ 1192 [2],[1] [3]). By the same judgment, Petitioner was also convicted, upon a bench decision, of Unlawful Possession of Marihuana (Penal Law § 221.05).

---

[1] As discussed in further detail below, this conviction was subsequently reversed by the Appellate Division, Fourth Department.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

**II. Factual Background and Procedural History**

**A.  Introduction**

In the early evening of October 3, 2004, Kristi Smith ("Smith" or "the victim") drove westbound on the New York State Thruway. She entered the left lane of the two-lane highway to allow traffic from exit 34 to merge onto the road. While she was still in the left lane, Petitioner, driving a pick-up truck with a trailer in tow, pulled in front of her, forcing her to slam on her brakes. Her car spun out of control, crossed the median and the eastbound lanes of traffic, and struck a tree. Petitioner pulled over on the westbound side of the highway, but drove off when state troopers came to Smith's aid. Smith sustained serious injuries.

A trooper stopped Petitioner at the next exit and noted that Petitioner was intoxicated. He also found a still-cool, open beer can in Petitioner's truck. When Petitioner refused to take a breathalyzer test, the troopers obtained a blood-draw order and determined that Petitioner's blood alcohol level was 0.15.

**B.  Indictment and Pre-Trial**

On or about January 26, 2005, an Ontario County Grand Jury charged Petitioner with one count of Vehicular Assault in the Second Degree (Penal Law §§ 120.03 [1], [2]), one count of Assault in the Second Degree (Penal Law § 120.05 [4]), two counts of

Operating a Motor Vehicle While in an Intoxicated Condition (VTL §§ 1192 [2], [3]), one count of Leaving the Scene of a Personal Injury Motor Vehicle Accident without Reporting (VTL § 600 [2]), and Unlawful Possession of Marihuana (Penal Law § 221.05). See Resp't Ex. B at 7-9.

On July 8, 2005 Petitioner proceeded to a Dunaway/Huntley hearing before County Court Judge Frederick G. Reed. The suppression court denied Petitioner's Huntley motion and, in a subsequent written decision, denied suppression of the compulsory test application and order, the blood test results obtained as a result of the order, and the evidence seized as a result of the order. The suppression court also denied Petitioner's application to dismiss the Driving While Intoxicated charge based on chemical analysis (Penal Law § 1192 [2]). See Resp't Ex. A.

**C.  The Trial**

**1.  The People's Case**

On October 3, 2004, Smith was driving to Sherrill, New York. Trial Trans. [T.T.] 72-73. As she drove westbound on the New York State thruway, she approached exit 43 at about 6:45 p.m. T.T. 75-76. At that point, the highway was two lanes wide, and she drove in the left lane to allow traffic to merge onto the thruway. T.T. 76-77. While she was still in the left lane, a trailer pulled directly in front of her. T.T. 78.

Smith swerved and slammed on her brakes. T.T. 78. Smith's car spun out of control, crossed the median and hit a tree. T.T. 78. Smith was knocked unconscious, and was unaware that her car had crossed the eastbound lanes. T.T. 78-79.

Christopher Sullivan ("Sullivan") was driving eastbound on the thruway with four passengers, including Timothy Slevin ("Slevin"). T.T. 121-122. Sullivan saw a pick-up truck, with a trailer in tow, move into the westbound lane. T.T. 122. He watched Smith's car swerve and cross the median and the eastbound lanes in front of him. T.T. 122-127. Sullivan managed to stop his car to avoid colliding with Smith. T.T. 127. Sullivan pulled into the breakdown lane and called 911 while Slevin ran down the embankment to Smith's car, which had crashed into a tree. T.T. 115-116, 128. Smith was pinned between the wheel and the dashboard and her head was bleeding. T.T. 116-117. Sullivan noticed that the truck with the trailer in tow had pulled over. T.T. 129.

At the time of the accident, Trooper Villone was driving eastbound to start his shift. T.T. 143-144. He noticed that cars were parked on the side of the road, and that a car had struck a tree off the roadway. T.T. 144-145. He stopped and saw that Smith was conscious, but unable to respond to questions. T.T. 145. Several people approached Trooper Villone and pointed to a white pick-up truck with a trailer attachment parked on the westbound side of the road. T.T. 129, 146-148.

Trooper Villone radioed a description of the truck and trailer to Trooper Bosworth, who was stationed at the next exit on the westbound side of the road. T.T. 149-151, 241-242. Trooper Bosworth soon saw Petitioner's truck and pursued it. T.T. 248-249. As he caught up to Petitioner, who was not speeding, he saw that Petitioner's truck swayed back and forth in the lane. T.T. 252. Trooper Bosworth pulled Petitioner over and asked him for identification. T.T. 254, 258.

As Petitioner fumbled to locate his papers, Trooper Bosworth asked if something unusual had happened, and Petitioner told him that he saw a car hit a tree. T.T. 259. Petitioner's speech was slurred, he smelled of alcohol, and his face was reddish in color. T.T. 260. Troopers Bosworth and Villone conversed over the radio, and then Trooper Bosworth told Petitioner that he had caused the accident. Petitioner denied involvement. T.T. 267.

As Trooper Bosworth waited for Trooper Villone, he conducted several field sobriety tests. Petitioner was unable to say the alphabet, and he was unable to stand on one leg. T.T. 272-278. Petitioner could walk a set number of paces and turn, but failed the finger-to-nose test. T.T. 278-281. Trooper Villone then arrived and performed a horizontal gaze nystagmus sobriety test on Petitioner, and observed that Petitioner's speech was slurred and that he had alcohol on his breath. The troopers concluded that Petitioner was intoxicated. T.T. 156-163, 281-287.

While Trooper Bosworth waited on the thruway for a tow truck, Trooper Villone transported Petitioner to the Canandaigua police barracks. T.T. 166, 288. After the tow truck arrived, Trooper Bosworth met up with Trooper Villone and Petitioner at the police barracks. There, Petitioner called his lawyer, and then refused to take a breathalyzer test. Subsequently, the troopers contacted the Ontario County District Attorney's office and eventually obtained a court order directing Petitioner's blood sample to be drawn.[2] T.T. 167-169, 311, 315, 342. Petitioner was then taken to Thompson Memorial Hospital in Canandaigua, New York, and, at approximately 10:10 p.m., a nurse drew Petitioner's blood. T.T. 97-103, 169.

While waiting for the tow truck, Trooper Bosworth performed an inventory search of Petitioner's truck. T.T. 290-291. He found a still-cold, half-empty can of a beer in a "cozy" insulator. T.T. 187, 290-292. He also found a cooler containing one empty can and two full cans of beer. T.T. 301. In the center console, he also found a bag of marijuana. T.T. 293.

The victim was airlifted to Strong Memorial Hospital. T.T. 81. She sustained a left knee fracture and two broken bones in her right foot. T.T. 82. She was cut above her right eyebrow, resulting in a permanent scar. Her right cheek was bruised, and she sustained burns on her neck and face. T.T. 82-84. She

---

[2] Trooper Bosworth testified that he, with the assistance of Ontario County Assistant District Attorney Tantillo, prepared the application for the court-ordered blood draw, which was subsequently brought to and signed by Judge Reed. T.T. 315.

remained wheelchair bound for three weeks after the accident and then used a walker for two months. T.T. 83. As a result of her injuries, her left knee "pops" and cannot be fully extended, she suffers from arthritis in her foot, and will likely develop degenerative arthritis in her left knee. T.T. 84-86.

Mark Warnuck, a forensic scientist with the New York State Police, performed a gas chromatographic analysis of Petitioner's blood sample, and determined that his blood alcohol level was 0.15. T.T. 348-360. He estimated that if the blood had been drawn at 7:00 p.m., when Petitioner was first stopped, Petitioner's blood alcohol level would have been about 0.19. T.T. 367-368.

2. **The Defense's Case**

Petitioner presented no evidence at trial.

3. **Verdict and Sentence**

On October 5, 2005, the jury found Petitioner guilty of Vehicular Assault in the Second Degree, Assault in the Second Degree, Leaving the Scene of a Personal Injury Incident without Reporting, and both counts of Driving While Intoxicated as a Misdemeanor. T.T. 492-494. He was also convicted, in a bench decision, of Unlawful Possession of Marihuana. T.T. 500. On October 12, 2005, Petitioner was sentenced to an indeterminate prison term of from one and one-third to four years on the vehicular assault conviction, a determinate term of seven years on the second degree assault conviction, one year each on the driving

while intoxicated and leaving the scene convictions, all to be served concurrently, and a $100 fine on the marijuana possession conviction. Sentencing Mins. [S.M.] 17-18.

**D.   The Direct Appeal**

In June 2007, Petitioner, through counsel, appealed his conviction in the Appellate Division, Fourth Department, arguing, *inter alia*, that the trial court erred in failing to suppress the results of the court-ordered blood testing. See Resp't Ex. B at 14-16.

The Appellate Division, Fourth Department agreed with Petitioner, finding that the application and order for the compulsory blood test were defective and that the evidence obtained therefrom should have been suppressed. Accordingly, the Appellate Division, Fourth Department modified Petitioner's conviction by reversing the conviction for driving while intoxicated (which required proof of intoxication with chemical analysis) and dismissing that count of the indictment (count four). The Appellate Division, Fourth Department affirmed Petitioner's conviction as to the remaining counts, finding that the suppression error was harmless as to them.[3] People v. Freeman, 46 A.D.3d 1375

---

[3] The Appellate Division ruled as follows: "We agree with defendant . . . that the court erred in denying his motion to suppress the results of the compulsory blood test performed on him, and we therefore modify the judgment accordingly. We note at the outset that our review of the suppression ruling is of course limited to the evidence presented at the suppression hearing. That evidence established that the Trooper who applied for a court-ordered blood test relied upon double hearsay, i.e., statements made by civilian witnesses to a fellow Trooper, to support his belief that the accident in question occurred in

(4th Dep't 2007) (Resp't Ex. E); lv. denied, 10 N.Y.3d 840 (2008) (Resp't Ex. F).

### E. The Habeas Corpus Petition

This habeas corpus petition followed, wherein Petitioner seeks relief on the ground that the Appellate Division, Fourth Department erroneously held that the suppression error was harmless as to the remaining counts. See Pet's Mem. of Law [Mem.] at 11-24 (Dkt. # 1); Pet's Reply 1-8 (Dkt. # 18).

## III. General Principles Applicable to Habeas Review

### A. The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

the course of defendant's operation of a motor vehicle. Although an application for a court-ordered blood test may contain hearsay and double hearsay statements that satisfy the Aguilar-Spinelli test, the application must disclose that it is supported by hearsay and identify the source or sources of the hearsay. Here, the application did not disclose that any of its information was based upon statements from civilian witnesses, nor did the application set forth that the Trooper had an independent basis for a finding of reasonable cause to believe that the accident occurred in the course of the operation by defendant of the vehicle. We thus conclude that the application and the ensuing order for a compulsory blood test were defective and that the evidence obtained therefrom should have been suppressed. Because a conviction of driving while intoxicated per se must be proved by chemical analysis, we further modify the judgment by reversing that part convicting defendant of driving while intoxicated under count four of the indictment and dismissing that count of the indictment. With respect to the remaining counts, however, the error in the court's refusal to suppress the results of the blood test is harmless beyond a reasonable doubt inasmuch as there is no reasonable possibility that the error might have contributed to defendant's conviction." Freeman, 46 A.D.3d at 1377 (internal citations and quotations omitted).

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state

-10-

court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838,

843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). The ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation. Id. at 194.

**IV. Merits of the Petition**

Petitioner contends that the Appellate Division, Fourth Department erred in finding that the failure to suppress the court order permitting Petitioner's blood to be drawn, and the evidence obtained therefrom, was harmless as to the remaining counts.[4] See

---

[4]

Petitioner also appears to argue, either as a stand-alone claim or as part of the instant claim, that Trooper Bosworth's reliance on hearsay information in the application for the court order directing Petitioner's blood to be drawn deprived him of his constitutional right to confront his accusers. See Mem. at 22-23; Reply at 2. This issue is moot to the extent that the trooper's failure to disclose his reliance on hearsay information rendered the application defective, which resulted in dismissal of Petitioner's driving while intoxicated conviction based on chemical analysis (VTL § 1192 [2]). See Freeman, 46 A.D.3d at 1377. Because there is no additional remedy to be had by this Court on habeas review, the Court dismisses Petitioner's confrontation claim to the

Mem. at 11-24; Reply at 1-8. As discussed below, Petitioner's claim is meritless.

In assessing the propriety of a state court's application of the harmless error doctrine, a habeas court must consider whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Fry v. Pliler, 551 U.S. 112, 116 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993). Moreover, the trial error "'must have been sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Edwards v. Marshall, 589 F.Supp.2d 276, 288 (S.D.N.Y. 2008) (quoting Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quotations and citation omitted).

Where, as here, only one conviction was dismissed, a court, in evaluating a claim of "prejudicial spillover" of evidence from an invalidated count, will look to the following factors: (1) whether the evidence from the invalidated count would have incited or aroused the jury to convict the defendant on the remaining counts; (2) whether the reversed and remaining counts arose out of similar facts, the evidence of which would have been admissible as to both; (3) whether the evidence on the reversed and on the remaining counts was completely dissimilar, permitting the inference that the jurors were able to keep the evidence separate; and (4) whether the

extent he has alleged such.

strength of the government's case on the remaining counts could withstand the potential spillover prejudice. Concepcion v. United States, 181 F.Supp.2d 206, 238 (E.D.N.Y. 2002) (citing United States v. Gore, 154 F.3d 34, 48-49 (2d Cir. 1998)).

Here, Petitioner contends that the jury might have acquitted him of all the charges "if it wasn't for the hypnotic and repetitive testimony of the illegally presented compulsory blood test." Mem. at 19. Petitioner does not explain, however, how the suppressed evidence "incited or aroused" the jury and compelled it to deliver a verdict convicting him of all charges, and proffers no support for its alleged "hypnotic" effect. Id. Notably, none of Petitioner's remaining convictions require blood alcohol analysis as an element of proof. Because the blood alcohol level proof requirement is dissimilar to the evidence required to prove the remaining counts, there could not have been -- despite Petitioner's conclusory assertion to the contrary -- prejudicial "spillover" effect on the remaining counts. See United States v. Rooney, 37 F.3d 847, 856 (2d Cir. 1996) ("The absence of prejudicial spillover can also be found where the evidence on the reversed and remaining counts are completely dissimilar, thus permitting the inference that the jurors were able to keep the evidence separate in their minds.").

Furthermore, because the proof of the remaining counts was sufficient to sustain convictions on these counts, Petitioner

cannot show that admission of his blood alcohol level removed a reasonable doubt as to these convictions. Here, the remaining counts were second degree vehicular assault, common law driving while intoxicated, second degree assault and leaving the scene of an accident. The latter two counts are unrelated to alcohol and require no further discussion by this Court. Vehicular assault requires proof that the defendant drove while intoxicated, but this offense permits conviction upon proof of driving while intoxicated under chemical analysis (VTL § 1192 [2]) **or** under the common law provision (VTL § 1192 [3]). See Penal Law § 120.03 [1]. Thus, the evidence obtained by the court order was not necessary to prove vehicular assault.

Moreover, the evidence of Petitioner's intoxication under the common law driving while intoxicated statute, VTL § 1192 [3], was overwhelming. Trooper Bosworth saw Petitioner's truck and trailer sway back and forth in the lane before he stopped Petitioner. T.T. 252. Trooper Bosworth testified that Petitioner's speech was slurred, he smelled of alcohol, his face was red, and there was a half-full, still-cool can of beer in Petitioner's console. T.T. 187, 260, 271, 290-292. Petitioner failed numerous field sobriety tests conducted by both troopers. T.T. 156-163, 272-287. See e.g., Grune v. Mazzuca, 2006 U.S. Dist. LEXIS 28917, *13-15 (N.D.N.Y. July 14, 2006) (although Appellate Division dismissed conviction for driving while intoxicated under § 1192 [2],

remaining evidence -- that Petitioner failed field sobriety tests, smelled of alcohol, had alcohol in his vehicle, and made statement regarding alcohol consumption -- were sufficient to establish violation of § 1192 [3]); see also People v. Scroger, 35 A.D.3d 1218, 1219 (4th Dep't 2006) (evidence that Petitioner failed field sobriety tests, smelled of alcohol, and had glassy eyes and slurred speech was legally sufficient to sustain common law driving while intoxicated conviction).

Because the blood alcohol level related only to the driving while intoxicated conviction that was dismissed and there was ample evidence supporting Petitioner's remaining driving while intoxicated conviction, as well as overwhelming evidence to support Petitioner's assault convictions and his conviction for leaving the scene of an accident, the suppression court's error in not suppressing the blood alcohol analysis evidence could not have had "substantial and injurious effect" on the jury's verdict. See Fry, 551 U.S. at 116 . Indeed, while Petitioner asserts that the chemical analysis evidence drove the jury to convict on all counts, he does not argue that the evidence supporting the remaining convictions was deficient in any respect.

Habeas courts have declined to disturb harmless error findings where the validly-admitted evidence supports the remaining convictions. See e.g., Edwards, 589 F.Supp.2d at 288 (finding that Petitioner's remaining convictions were properly upheld by

Appellate Division where admission of any erroneously excluded evidence pertaining to them "would not have provided a basis for reasonable doubt that did not otherwise exist."); Rodriguez v. Superintendent Collins Corr. Facility, 549 F. Supp.2d 226, 235 (N.D.N.Y. 2008) (finding that the Appellate Division's determination that admission of evidence was harmless was not contrary to clearly established federal precedent where erroneously admitted 911 call was "only one of several important pieces of evidence" presented by prosecution and where Petitioner's proof of guilt was overwhelming).

In this case, the blood alcohol evidence had no bearing on the proof of the remaining counts, and Petitioner is unable to show that the chemical analysis evidence was the force behind the jury's decision to convict him of all the crimes charged. Consequently, the Appellate Division's determination of this issue did not contravene or unreasonably apply clearly established federal precedent. The claim is therefore dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of

Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

———————————————————
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   November 17, 2010
         Rochester, New York